**WHIPP et al. v. UNITED STATES.**

No. 5744.

Circuit Court of Appeals, Sixth Circuit.

March 6, 1931.

J. W. Sharts, of Dayton, Ohio, for appellants.

Harry A. Abrams, of Cincinnati, Ohio (Haveth E. Mau and Robert Houston French, both of Cincinnati, Ohio, on the brief), for the United States.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

Appellants, hereinafter referred to as the defendants, were indicted, tried, and convicted in the court below upon a charge of conspiracy to violate section 62 of the Criminal Code (18 U. S. C. § 118 [18 USCA § 118]), which section provides that, "whoever shall forcibly assault, resist, oppose, prevent, impede, or interfere with any officer or employee of the Bureau of Animal Industry of the Department of Agriculture in the execution of his duties," shall be punished as therein provided. The chief meritorious question presented is, not whether a conspiracy existed to offer forcible resistance to such officer or employee of the Bureau of Animal Industry, but whether there was adequate justification therefor, and whether such employee was, at the time, in the lawful performance of his federal duties, for it is only when the resistance is offered "in the execution of" such duties that a crime results.

Various sections of the Ohio General Code provide for the testing of cattle by the injection of tuberculin, as well as for the eradication of other contagious and infectious diseases of animals, and for co-operation with

the federal government for such purposes. Similarly, Acts of Congress authorize the Secretary of Agriculture to make special investigation as to the existence of contagious diseases and to establish such regulations concerning the export and transportation of live stock as the results of his investigations should indicate; to promulgate rules and regulations for the speedy and effectual suppression of such diseases, and for co-operation with the several states in prevention of their spread from one state or territory to another (Act of May 29, 1884, c. 60, 23 Stat. 32 (21 U. S. C. §§ 112–114 [21 USCA §§ 112–114]); to establish rules and regulations concerning the export and transportation of live stock "from any place within the United States where he may have reason to believe such diseases may exist into and through any State or Territory" (Act of February 2, 1903, c. 349, § 1, 32 Stat. 791 (21 U. S. C. § 120 [21 USCA § 120]); to quarantine any state or territory "when he shall determine the fact that cattle or other livestock in such State or Territory * * * are affected with any contagious, infectious, or communicable disease," and "to make and promulgate rules and regulations which shall permit and govern the inspection, disinfection, certification, treatment, handling, and method and manner of delivery and shipment of cattle or other livestock from a quarantined State or Territory" (Act of March 3, 1905, c. 1496, §§ 1, 3, 4, 33 Stat. 1264 (21 U. S. C. §§ 123, 125, 126 [21 USCA §§ 123, 125, 126]). These are the principal acts of Congress to which reference is made by counsel. Co-operation by the state of Ohio with the Bureau of Animal Industry of the Department of Agriculture has been approved and authorized by the General Assembly of that State. Ohio General Code, §§ 5806, 5807.

The defendants are disbelievers in the merit, desirability, and harmlessness of the tuberculin testing of cattle. On the contrary, they believe the injection of tuberculin highly injurious to and even deadly in its effect upon healthy animals. Under such belief they instituted injunction proceedings in the state courts of Ohio to restrain the state veterinarian from the threatened compulsory testing of their cattle. A temporary injunction was issued. Pending the hearing of that cause, and while the temporary injunction was in full force, and to avoid the effect of such injunction, the state officers procured an inspector of the Bureau of Animal Industry of the United States to accompany them and demand, as if on behalf of the federal government, the right to make the tuberculin test. This demand was resisted with such determination and show of force as resulted in the abandonment of the proposed tests and brought about the present indictment.

At the trial of the defendants it was not shown that any of the cattle of the defendants were suffering from tuberculosis or other communicable disease, that any exportation or interstate transportation of such live stock was contemplated by the defendants, that the Secretary of Agriculture had reason to believe that such diseases existed in that locality, or that any quarantine had been established pursuant to the above-mentioned powers of the Secretary of Agriculture. Under such circumstances we search in vain for evidence of any federal duty in the performance of which the inspector of the Bureau of Animal Industry was engaged, and it is immaterial whether or not he was employed at the time in the execution of a state law or in the assistance of state officers, even though such employment arose by virtue of his connection with the Bureau of Animal Industry, provided he was acting solely under and by virtue of the state laws. It is objected that it is not necessary that the particular act upon which the federal agent is engaged shall be specifically enumerated in an act of Congress, but that it is sufficient if the alleged official action be governed by a lawful requirement of the Department under whose authority the officer is acting. U. S. v. Birdsall, 233 U. S. 223, 34 S. Ct. 512, 58 L. Ed. 930. This may be conceded; but the particular act must nevertheless be responsive to some equally particular requirement of federal authority, in order to make such act one in the performance of a federal duty. A mere general policy of mutual co-operation is not enough. The fallacy of the argument lies in the assumption that, because he is acting in co-operation with state officers, and because the federal law requires such co-operation, all acts of the federal inspector must necessarily be done in the performance of a federal duty. Whether this is so or not really depends upon whether the act is performed in the administration of a state or federal law, or upon the initiative of a state or federal executive. The mere fact that by virtue of established comity a federal officer was procured to be present and demand the right to make this test does not alter the fact that the only authority for making such tests can be found in the state statutes, except and unless it be in connection with interstate commerce. . . . .

It is urged that the right to make a tuberculin test is incidental and essential to the proper performance of the right of the Secretary of Agriculture to establish quarantine. But the inspector did not purport to act upon this specific grant of authority, nor is there any evidence, as we have said, of a finding of the necessity of quarantine, or even that cattle in the vicinity were affected with a communicable disease, and some such finding is made a condition precedent to the establishment of a quarantine. 21 U. S. C. § 123 (21 USCA § 123).

Much reliance is placed upon the case of Thornton et al. v. U. S., 271 U. S. 414, 46 S. Ct. 585, 70 L. Ed. 1013. This decision is not here controlling, for in that case the cattle were ranging in close proximity to the state line, if not actually across it, and this was held to be a sufficient connection with interstate commerce. But an even more obvious distinction lies in the fact that the dipping there required was a direct treatment for, and a prevention against the interstate spread of, splenetic fever, or cattle fever tick, which had already been found to exist as an epidemic in the vicinity there involved. In the present case the injection of tuberculin is merely a test for determining whether the animal is infected with tuberculosis, not a cure or treatment for such tuberculosis. Here the cattle were not adjacent the state line nor likely to graze across it, and no transportation in interstate commerce was suggested as imminent. Under these circumstances we are of the opinion that the power to provide for compulsory tuberculin tests was a purely intrastate function. The decision of the Circuit Court of Appeals for the Fourth Circuit, in Carter et al. v. United States, 38 F.(2d) 227, is in no way inconsistent with the views here expressed.

█ Lastly, it is argued that the grant of power to make special investigation as to the existence of contagious, infectious, or communicable diseases (21 U. S. C. § 112 [21 USCA § 112]) implies the right to do all acts which are reasonably necessary to complete such investigation. Doubtless, Congress may provide for the compulsory inspection by tuberculin test or otherwise, of cattle before they enter upon an interstate journey, or even in the establishment of intrastate quarantine regulations, to the end that communicable diseases may not ultimately be carried across state boundaries. But the sanctity of a man's home and of his personal property, when confined upon the real estate occupied by him, is such that neither compulsory investigation as to its condition, nor its condemnation or destruction, under the general police power and in the interest of public welfare, should be permitted, except under proper warrant, or upon legal proceedings duly instituted. Citation of authority in support of this statement would seem unnecessary, but compare Interstate Commerce Commission v. Brimson, 154 U. S. 447, 478, 479, 14 S. Ct. 1125, 38 L. Ed. 1047; Sentell v. New Orleans, etc., R. R. Co., 166 U. S. 698, 705, 17 S. Ct. 693, 41 L. Ed. 1169; Truax v. Corrigan, 257 U. S. 312, 329, 42 S. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375.

Briefly stated, our conclusion is that investigation by the making of tests solely to determine the existence or nonexistence of communicable diseases in cattle which are not shown to have entered, or to be about to enter, the stream of interstate commerce, lies exclusively within the domain of the police power of the state, and the rendition of a service by a federal officer, solely in aid of the administration of a state law authorizing such compulsory tests, is not the performance of a federal duty; nor does such act take federal color by necessary implication from any of the other duties imposed upon or authority lawfully granted to the Secretary of Agriculture. Because of this conclusion it is unnecessary to determine the other questions argued. The judgment of the District Court is reversed, and the cause is remanded for error in refusing to direct verdicts of not guilty.