## UNITED STATES v. GARDEN HOMES, Inc.
### Civil Action No. 1035.

United States District Court
D. New Hampshire.
June 18, 1953.

John J. Sheehan, U. S. Atty., and Robert D. Branch, Asst. U. S. Atty., Concord, N. H., for plaintiff.

Angus M. MacNeil, Boston, Mass., for defendant.

CONNOR, District Judge.

This is an action on a note, with a prayer for judgment and decree of foreclosure of real estate mortgages and a chattel mortgage.

Jurisdiction is conferred by Section 1345 of Title 28 U.S.C.

On August 10, 1949, the defendant executed a note and mortgage to the Worcester Federal Savings and Loan Association of Worcester, Massachusetts, in the sum of $1,252,900, and later, as additional security, gave another mortgage covering certain rights and easements against adjoining land. As further security for said note, on March 29, 1951, the defendant executed a chattel mortgage covering a large number of refrigerators, electric stoves, and hot water heaters, installed in units of the project.

The real estate pledged consisted when completed of 82 modern duplex houses, located on a tract of 13 acres in the residential section of Manchester known as North Union Heights.

The note bore interest at the rate of 4% per annum on the unpaid balance, interest alone to be payable monthly on the first day of September, 1949, and on the first day of each month thereafter to and including January 1, 1951. Commencing on the first day of February, 1951, installments of interest and principal were to be paid at the rate of $5742.46, the payments to continue monthly until the entire indebtedness had been paid, with termination date fixed as August 1, 1983. These terms were modified by agreement dated March 29, 1951, whereby interest payments were to continue, but payments on principal were not to begin until September 1, 1951, when the monthly payment for both was to be in the sum of $5789.45. Under the terms of the note, it is provided that if a default occurs and is not cured prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable, without notice, at the option of the holder.

Proceedings for foreclosure under Revised Laws of New Hampshire and all amendments thereto relating to foreclosure of Power of Sale mortgages were defined in the real estate mortgages. R.L.N.H. c. 261, § 20 et seq.

Under the arrangement that existed between the borrower and the bank, funds were advanced as the construction progressed, with the final payment March 29, 1951. The loan was insured under Title VI, Section 608, of the National Housing Act, Title 12, U.S.C., Section 1743. Alleging default, the bank on May 7, 1952, conformably to the terms of the note, declared the entire amount of principal and interest to be due and payable. Invoking the pertinent provisions of the Housing Act, Sec. 1743(c) of Title 12 U.S.C.A., the bank on June 12, 1952, assigned the note and mortgages above described to Franklin D. Richards as Federal Housing Commissioner.

### Discussion.

■ The decisive issue on the state of the record is whether there has been a default under the terms of the note. These are clear and unambiguous, and the evi-

dence discloses that the defendant failed to comply with the requirements thereof. The mode of payments of principal and interest, and a grace period for the curing of a default is fully prescribed. Supplementing this, were further provisions contained in the mortgage, detailing the allocation of the payments and the order of priority. Under the provisions of the mortgage, the mortgagor was bound to pay the following:

(I) premium charges under the contract of insurance with the Federal Housing Commissioner;

(II) ground rents, if any, water rates, taxes, special assessments, fire and other hazard insurance premiums;

(III) interest on the note secured by the mortgage;

(IV) amortization of the principal of the note.

These payments were to be added together, and the aggregate amount thereof was to be paid by the mortgagor each month, in a single payment, to be applied by the mortgagee to the items as above set forth. Any deficiency in the payment of the aggregate monthly installment, unless made good by the mortgagor prior to the due date of the next such payment, constituted an event of default under this mortgage.

At no time after September 1, 1951, when principal payments were to begin, were these aggregate monthly commitments met when due, but all defaults were made good either within the period permitted or thereafter, excepting the commitment due and payable April 1, 1952.

■ The only relevant defense interposed by the defendant to the claimed breach is that there were funds in the hands of the bank which if applied would have prevented a default. This proposal is without merit. The funds claimed to be available were of two categories, one consisted of two checks tendered the bank by the president of the defendant corporation, one Angus MacNeil, and the other was a personal deposit standing in his name. Neither could be utilized for the purpose claimed. The checks totalling $14,567.81, dated April 24, 1952, were mailed to the bank with a covering letter conditioning the use thereof upon the approval by the Federal Housing Authority of a waiver of payments of principal during a "temporary unoccupancy" which the defendant claimed was necessary to keep the project on an even keel. Perforce such limitation, the bank properly declined to consider the checks acceptable tender.

Other funds urged as being available for the due payment was a deposit of approximately $12,000, standing in the name of MacNeil, already pledged under an indemnity agreement to save the bank harmless from any loss or damage resulting from any default of the terms of the mortgage and note. The defendant contends that such agreement could not have been entered into, and MacNeil served notice under date of February 25, 1952, that he terminated the agreement on the premise that such was prohibited under a regulation of the Housing Administration published in 24 C.F.R., Chapter II, Sec. 283.20, and which reads as follows:

"*Recording fees, etc.* In addition to the charges hereinbefore mentioned, the mortgagee may collect from the mortgagor only recording fees, mortgage and stamp taxes, if any, and such costs of survey and title search as are approved by the Commissioner."

■ While it seems hardly necessary to stress the fallacy of this contention, a short answer thereto is that if any liability resulted under the agreement, it would not be collected from the "mortgagor" but from a third party, and thus not within the purview of this regulation.

MacNeil, as president of the defendant corporation, undertook to present an affidavit of bias or prejudice of the judge, but, not being a member of the bar and having failed to comply with the rule of this court (Rule 1, Sec. 4, requiring nonmembers of this bar to be associated with a member of the bar of this district) and several directives of this court, was not permitted to file this pleading. After lengthy colloquy with the court concerning this refusal and the matter of getting the trial under way, he assured the court that he was content with the court's statement relative to claimed bias and that "that was the end of

the affidavit question." When hearing was resumed the following day, MacNeil, having been allowed qualifiedly to conduct the defense, proffered a similar affidavit, and the court, upon consideration and examination, directed the clerk to receive, stamp and file it; whereupon, the Government moved to strike. The court ruled that the affidavit was legally insufficient and later in the trial ordered it stricken. Benedict v. Seiberling, D.C., 17 F.2d 831, 836; Sanders v. Allen, D.C., 58 F.Supp. 417, 419. The court, having stated unequivocally that he had no personal bias or prejudice against the Garden Homes, Inc., or in favor of the United States, declined to disqualify himself, and the trial proceeded. Eisler v. United States, 83 U.S.App.D.C. 315, 170 F.2d 273, 278, certiorari granted, 335 U.S. 857, 69 S.Ct. 130, 93 L.Ed. 404, certiorari dismissed, 338 U.S. 883, 70 S.Ct. 181, 94 L.Ed. 542; Sanders v. Allen, supra.

█ The statute, Section 144 of Title 28 U.S.C., provides that a party may file an affidavit if it is accompanied by a certificate of counsel of record, stating that it is made in good faith. And one may not be counsel of record unless a member of the bar of the court before which appearance is made. Currin v. Nourse, 8 Cir., 74 F.2d 273, 275, certiorari denied, 294 U.S. 729, 55 S.Ct. 638, 79 L.Ed. 1259; United States v. Onan, 8 Cir., 190 F.2d 1, 6, certiorari denied, 342 U.S. 869, 72 S.Ct. 112, 96 L.Ed. 654. One of the salient reasons for the rule is that the court, "which has no means of protecting itself from unjustified attack, shall at least have the protection afforded by the certificate of a responsible member of the bar." Morse v. Lewis, 4 Cir., 54 F.2d 1027, 1032, certiorari denied, 286 U.S. 557, 52 S.Ct. 640, 76 L.Ed. 1291.

█ But the rejection was not based solely upon noncompliance with the rule. The complaints in the affidavit, considered separately or together, did not set out facts and reasons legally sufficient to have compelled the court to recuse itself from this case. Disqualification can be grounded only upon personal bias or prejudice, and this bias or prejudice is an attitude against a party to a proceeding, "derived otherwise than through judicial proceedings." U. S. v. 16,000 Acres of Land, et seq., D.C., 49 F.Supp. 645, 649; Ryan v. United States, 8 Cir., 99 F.2d 864, 871, certiorari denied, 306 U.S. 635, 59 S.Ct. 484, 83 L.Ed. 1037, rehearing denied, 306 U.S. 668, 59 S.Ct. 586, 83 L.Ed. 1063. The affidavit is almost wholly comprised of complaints of adverse rulings and orders. "The bias or prejudice which can be urged against a judge must be based upon something other than rulings in the case." Littleton v. De Lashmutt, 4 Cir., 188 F.2d 973, 975, certiorari denied, 342 U.S. 897, 72 S.Ct. 229, 96 L.Ed. 672. See also Berger v. United States, 255 U.S. 22, 31, 41 S.Ct. 230, 65 L.Ed. 481; Ex parte American Steel Barrel Company, 230 U.S. 35, 33 S.Ct. 1007, 57 L.Ed. 1379; Beecher v. Federal Land Bank, 9 Cir., 153 F.2d 987, 988, certiorari denied, 328 U.S. 871, 66 S. Ct. 1364, 90 L.Ed. 1641, rehearing denied, 329 U.S. 819, 67 S.Ct. 28, 91 L.Ed. 697.

Findings and Rulings.

Findings of Fact.

1. That the defendant on August 10, 1949, executed a note and mortgage to the Worcester Federal Savings and Loan Association, in the sum of $1,252,900.

2. That on May 13, 1950, the defendant executed as additional security for said note another mortgage covering certain rights and easements against land adjoining the property described in the first mortgage above referred to.

3. That on March 29, 1951, the defendant executed as additional security for said note a chattel mortgage covering certain household equipment.

4. That on April 1, 1952, the defendant was in default on said note and said default has continued to date.

5. That the amount which then and there became due and payable was $1,241,494.64.

6. That the Worcester Federal Savings and Loan Association by registered letter dated May 7, 1952, gave notice to the defendant of the election by said bank to accelerate the entire balance of principal and interest due, in accordance with the terms of said note.

7. That said note and mortgages were assigned by the Worcester Federal Savings

and Loan Association to Franklin D. Richards as Federal Housing Commissioner on June 12, 1952.

8. That notice of said assignment was given to the mortgagor by the assignee on June 18, 1952.

Rulings of Law.

1. That the United States of America is the proper party plaintiff.

2. That the said defendant is in default on said note and has been continuously in default since April 1, 1952.

3. That the plaintiff is entitled to judgment in the sum of $1,241,494.64, the amount of principal outstanding on the date of default, with interest at the rate of 4% per annum to the date of the decree, plus costs.

4. The plaintiff is entitled to foreclosure of said real estate mortgages and said chattel mortgage, under which said property is to be sold, with the proceeds to be applied to the mortgage debt.

The plaintiff is directed to submit forthwith a draft of such decree for the court's approval and issuance.