**Chester WHITE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 17438.**

United States Court of Appeals
Eighth Circuit.

April 28, 1964.

Alan E. Popkin, St. Louis, Mo. (appointed by Court), made argument and filed brief for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., made argument for appellee (Richard D. FitzGibbon, Jr., U. S. Atty., was with him on brief).

Before VAN OOSTERHOUT, RIDGE and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

Defendant, Chester White, was tried to a jury and convicted on all four counts of an indictment charging him in Counts I and II with the unlawful acquisition of marijuana on November 30, 1962 and December 2, 1962 without payment of the requisite transfer tax (26 U.S.C.A. §§ 4741(a), 4744(a)) and in Counts III and IV with the unlawful possession and sale of heroin without a government order on December 23, 1962 (21 U.S.C.A. § 174 and 26 U.S.C.A. § 4705(a)). As a second offender of marijuana violations, defendant received fifteen year sentences for each conviction on Counts I and II (26 U.S.C.A. § 7237(b) and (c) ) and fifteen year terms for each conviction on the remaining two counts, all sentences to run concurrently.

Appealing in forma pauperis, defendant contends that the District Court committed prejudicial error under Rule 46 (a) of the Federal Rules of Criminal Procedure and Amendment VIII to the United States Constitution by setting his bail excessively at $5,000.00 following denial of a motion for release on his own recognizance which prevented pretrial freedom necessary to the preparation of his defense. Secondly, defendant maintains that the prosecution committed reversible error at the trial below by failing to produce as a witness one Sylvester Buchanan who, working undercover as an informer for the Federal Bureau of Narcotics, witnessed all the alleged criminal acts forming the basis of Counts III and IV which pertain exclusively to the charges of illegal possession and sale of heroin on December 23, 1962. Defendant submits this was the one witness who could have exonerated him of these charges and that the government's suppression of his material testimony so infected the jury with prejudice as to his guilt on all the charges that he was deprived of due process of law guaranteed by Amendment V.

As a foreword to consideration of defendant's arguments, we are constrained to point out a well settled principle of this Circuit in the disposition of criminal appeals. When a defendant is convicted of a multiple count indictment and receives concurrent sentences which do not exceed that which lawfully might be imposed under a single count, the judgment must be affirmed if the conviction on any count is valid. Johnson v. United States, 329 F.2d 600 (8th Cir. 1964); Gajewski v. United States, 321 F.2d 261, 264 (8th Cir. 1963), cert. denied 375 U.S. 968, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964); Bunn v. United States, 260 F.2d 313, 315–316 (8th Cir. 1958).

Since the defendant does not attack the sufficiency of the evidence underlying the jury's verdict, a brief sketch of the pertinent facts taken from the original pleadings and transcript of evidence will suffice. On the evening of November 30, 1962, two regularly employed agents of the Federal Bureau of Narcotics, Snokhous and Maher, performed a typical pre-purchase search of special employee Matha, a hired informer whose job it was to arrange a purchase of narcotics from the defendant, a suspected peddler. Clean of any narcotics or money, Matha was entrusted with government funds and driven by the agents to a hotel in St. Louis, Missouri where outside he met the defendant and a female companion in defendant's automobile. The three then drove to another address, tailed by the agents. The female occupant departed, entered a house, and returned shortly thereafter with a brown package which Matha testified he shortly thereafter purchased from the defendant with the government funds. Keeping Matha under constant surveillance from their trailing vehicle, Agents Snokhous and Maher picked up Matha who delivered to them the package with its green vegetable contents which a government chemist, as well as a disinterested, court-appointed chemist of the St. Louis Police Department, testified was marijuana.

On December 2, 1962 a second sale was arranged after Matha telephoned the defendant who, overheard by Agent Snokhous, said that he was "ready to deal".

That afternoon regular Agents Snokhous, Maher and Hall searched informer Matha before he embarked on his mission, furnished him with government funds, and kept him under constant observation while he exchanged objects with the defendant seated in the driver's seat of his automobile accompanied by an unidentified male in a St. Louis parking lot. The contents of the package Matha obtained in the exchange with defendant were again analyzed by both chemists as marijuana.

On December 23, 1962, Agent Snokhous and Matha met the defendant, accompanied by one Sylvester Buchanan, another informer especially hired by the Bureau of Narcotics, at a St. Louis bar. In the presence of the others, Snokhous gave the defendant $150.00 in return for an aluminum foil wrapped package, containing a white powder which the defendant procured from behind the front seat of his automobile and was subsequently proven to be heroin upon chemical analysis by both testifying experts.

Testifying in his own behalf, defendant denied possessing or selling narcotics on any of the alleged occasions. He insisted that his own addiction to drugs for relief of pain from serious diseases had prompted him to engage in a barter with Matha at the November 30 meeting, trading him a radio and pistol his female companion acquired from his residence in return for drugs. He explained his presence during the second alleged sale of narcotics by testifying that he had only provided his male companion, known only as "Rob", with transportation to the scene of the latter's sale of marijuana to Matha in exchange for a promised "fix" from his passenger. The defendant maintained that his meeting with Agent Snokhous and informer Matha on December 23, 1962 at the St. Louis bar was arranged by the second informer, Buchanan, whom he drove to the rendevous, and who sold heroin to Snokhous, which had been transported in his car without the defendant's knowledge. The jury's finding defendant guilty on all counts as charged indicated their disbelief of his testimony and accreditation of the testimony of the government's principal witnesses, Snokhous, Maher and Matha.

Prior to trial, the District Court granted defendant's request for subpoena of witness Buchanan, among others, at government expense. When the witness could not be located for service by the United States Marshal's office at all known addresses supplied by the incarcerated defendant, the District Judge granted defense counsel one continuance for this purpose and postponed trial of the case twice, originally docketed April 22, 1963 and not commenced until August 8, 1963. Agent Snokhous testified he confronted Buchanan on the street three weeks prior to trial, informed him of the subpoena for appearance as a witness at the impending trial, and instructed him to report to the United States Attorney during the interim. When the witness ultimately failed to appear, the District Judge denied defense counsel's request for another continuance because personal inquiry by the Court of the Marshal's office indicated the witness could not be traced. Moreover, a prior statement given to the Bureau of Narcotics by the witness was shown to the Court in camera by the prosecution, satisfying the District Judge the testimony of the witness would not have been favorable to the defendant in any event.

Defendant's reliance upon Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) and United States v. Clarke, 220 F.Supp. 905 (E.D.Penn.1963) as authority for the proposition the government's inability to produce at trial an informer and eyewitness to the charged crime constituted a suppression of material evidence, thereby depriving defendant of due process of law, is ill founded. Each case is distinguishable and uncontrolling here. Roviaro stands singularly for the legal theorem that the government may not at trial refuse to disclose the identity of an informer instrumental in the apprehension of a defendant charged with a narcotics violation on grounds the information is privileged. The government ob-

viously complied with the narrow dictates of Roviaro in the instant case by furnishing defendant with the informer's name, while the trial court itself twice postponed the hearing pending location of the witness by the Marshal's office, Bureau of Narcotics or defense counsel, all to no avail.

The Clarke case, nonetheless, alludes to a duty upon the prosecution to either produce a special government employee who is a key eyewitness to an alleged crime, or show reasonable efforts in that direction. In Clarke the district judge found that duty was unreasonably discharged inasmuch as the Bureau of Narcotics only telephoned the informer's assumed residence and visited his former place of employment in an effort to effectuate service.

■ Contrastingly, in the instant case two governmental agencies diligently searched for the reluctant witness whose whereabouts the Marshal's office assured the District Judge was unknown before defendant was ordered to stand trial. Under these circumstances, the government met the watchword of "reasonableness" in its efforts to locate the missing witness. We would be indulging in legal gymnastics if we held that the District Judge, displaying the patience of Job and fairness of Solomon, by granting the defense two trial postponements, issuing subpoenas for defense witnesses at government expense, appointing a disinterested chemist, requiring a bill of particulars from the government, and subpoenaing defendant's military service records of achievement, deprived the defendant of due process of law in finally bringing the case to trial when all attempts at locating one recalcitrant witness proved abortive.

Moreover, this absent witness had no bearing or relation to the government's proof of Counts I and II dealing with the marijuana violations. We cannot agree with defendant's supposition that his non-production by the government for questioning by the defendant or the court concerning Counts III and IV colored the jurors' minds as to defendant's guilt of Counts I and II which is supported by overwhelming, condemnatory evidence.

■■ We come now to defendant's contention it was manifest error for the District Judge to set defendant's bail at $5,000.00 and deny a pretrial motion for defendant's release on his own recognizance, tantamount to overruling defendant's claim the amount of bail was excessive. There is no question defendant was entitled to apply for bail prior to conviction. See Rule 46(a) (1), Fed.R. Crim.P. Subsection (c) of Rule 46 prescribes that the judge fix bail in amount adjudged sufficient to "insure the presence of the defendant, having regard to the nature and circumstances of the offense charged, the weight of the evidence against him, the financial ability of the defendant to give bail and the character of the defendant".

Defendant urges his impecunious financial status and loss of pretrial freedom essential to the preparation of his defense are the overriding criteria of "excessiveness" which Amendment VIII forbids. Citing Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951). No extended discussion of the formula outlined in Rule 46, supra, is necessary as justification for our agreement with the propriety of its application by the District Judge under the circumstances of this particular case. We simply point out that the governing criterion adopted by this Circuit to test the excessiveness of bail proscribed by Amendment VIII is, not as defendant suggests, but whether bail is "set at a figure higher than an amount reasonably calculated to insure that the accused will stand trial and submit to sentence if convicted". Forest v. United States, 203 F.2d 83, 84 (8th Cir. 1953). The mere financial inability of the defendant to post an amount otherwise meeting the aforesaid standard does not automatically indicate excessiveness. The purpose for bail cannot in all instances be served by only accommodating the defendant's pocketbook and his desire to be free pending possible conviction.

Furthermore, defendant's requested review of an order fixing bail is improvidently raised upon appeal from a judgment of conviction. Hewitt v. United States, 110 F.2d 1, 6 (8th Cir. 1940), cert. denied 310 U.S. 641, 60 S.Ct. 1089, 84 L.Ed. 1409 (1939); Kaufman v. United States, 325 F.2d 305 (9th Cir. 1963). As stated in Stack v. Boyle, supra, 342 U.S. at page 6, 72 S.Ct. at page 4, 96 L.Ed. 3:

> "The proper procedure for challenging bail as unlawfully fixed is by motion for reduction of bail and appeal to the Court of Appeals from an order denying such motion."

Since the defendant's conviction on Counts I and II is unassailable, and we find his arguments for reversal of conviction under Counts III and IV are unmeritorious for the reasons stated, his appeal from the judgment of conviction on all counts is denied.

We commend Alan E. Popkin, court-appointed counsel, for the superior caliber of his brief and oral argument presented in behalf of the defendant's appeal.

Affirmed.