Robert Donald **HODGDON**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 18251.

United States Court of Appeals
Eighth Circuit.

Sept. 12, 1966.

---

Douglas Hall, of Hall, Smith, Hedlund, Juster, Forsberg & Feikema, Minneapolis, Minn., for appellant.

Patrick J. Foley, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Hartley Nordin, U. S. Atty., Minneapolis, Minn., on the brief.

Before VOGEL, Chief Judge, MEHAFFY, Circuit Judge, and McMANUS, District Judge.

McMANUS, District Judge.

This is an appeal *in forma pauperis* from a jury conviction in the United States District Court, District of Minnesota, on both counts of a two-count indictment. Count I charged the appellant with endeavoring by threats and force to intimidate a United States Commissioner in violation of 18 U.S.C.A. § 1503. Count II charged appellant with forcibly assaulting a United States deputy marshal while engaged in the performance of his official duties, in violation of 18 U.S.C.A. § 111. Appellant was sentenced to serve two years on Count I and eight years on Count II, the terms to run consecutively.

Appellant's grounds for appeal are as follows:

I. That the trial court erred in overruling appellant's motions to dismiss the indictment.

(a) for lack of jurisdiction

(b) for insufficiency of Count II, in that the marshal was attempting to arrest appellant on the basis of an invalid warrant when the assault occurred, and was therefore not engaged in the performance of his official duties within 18 U.S.C.A. § 111.

II. That there was insufficient evidence to sustain a conviction under Count I of the indictment.

III. That the United States District Court for the District of Minnesota was biased against appellant and therefore unable to afford him a fair trial.

IV. That appellant's right to a speedy trial under the sixth amendment to the United States Constitution was violated.

V. That appellant was wrongfully prevented from adequately preparing his defense because his bail, in the sum of $50,000.00, was excessive, and because he did not have access to certain legal materials during his confinement.

VI. That certain exhibits from the files of the Minnesota Mental Hospital, Moose Lake, Minnesota, offered to show efforts by the defendant to learn of and protect his rights during his confinement there in 1962, were erroneously excluded.

We affirm.

The facts are as follows:

Appellant was committed to the Medical Center for Federal Prisoners, Springfield, Missouri, for psychiatric observation on May 18, 1965, by order of Chief Judge Edward J. Devitt of the District of Minnesota. The staff there determined that although appellant is a chronic schizophrenic, he could be returned to the court "with an adjudication of competency." It was found that he was able to understand the charges against him, to assist in his defense, and to cooperate with counsel. There is thus no question of his mental competency in these proceedings. Appellant's background, however, is relevant in describing the events which led to his conviction and subsequent appeal.

Appellant is a thirty-two year old male who has had mental difficulties most of his adult life. In June 1956, he was taken by request of his parents to Rochester, Minnesota for mental examination. A court hearing was held and he was committed to the Minnesota Mental Hospital at Moose Lake. He was released provisionally in October 1956, and thereafter was returned to the hospital four times for varying periods before his final discharge on September 21, 1963.

While on provisional release in 1962, appellant initiated a series of associations with various lawyers and public officials in connection with what he thought were certain unlawful actions by governmental agencies. These he referred to generally as "misprison of treason." He believed that his constitutional rights had been violated in his original commitment and subsequent returns to Moose Lake, and in medical treatment which he underwent during his confinement. Appellant views himself as a staunch defender of the individual liberties guaranteed by the Constitution. He believes that those who are not in accord with his interpretations of the Constitution are guilty of treason. He often made attempts to initiate proceedings against the governments of the United States and Minnesota and their agents to obtain what he called a "redress of grievances." He made frequent visits to federal offices in Minneapolis and became well acquainted with many federal officials. He also began to carry firearms because he feared his life might be endangered on account of his activities on behalf of the Constitution.

Starting in approximately November 1964, appellant began consulting United States Commissioner Bernard Zimpfer. He appeared at Mr. Zimpfer's office from time to time to discuss his rights and the administration of justice in general. In March 1965, appellant attended a Commissioner's hearing involving one Louis Alvin Thomas, who was charged with failure to pay a firearm tax on a sawed-off shotgun which had been found in his possession. Appellant believed the tax in question was an infringement on the peoples' constitutional right to keep and bear arms, and so informed the Commissioner after the hearing was concluded. Sometime after the hearing appellant called both Zimpfer and his law partner, expressing his displeasure with the Commissioner's handling of the Thomas matter. He informed the Commissioner that the charge against Thomas should have been summarily dismissed. Zimpfer testified that he was alarmed by the antagonistic tone of appellant's voice during this call.

Late in the afternoon of April 21, 1965, appellant appeared at Commissioner Zimpfer's office in Minneapolis. The two men had a private conversation, the nature of which is in dispute. Appellant first discussed several violations of constitutional rights which he alleged had been committed by the city police, the sheriff's office, United States Marshals, city, state, and federal courts, and the United States Attorney. He accused all parties concerned of treason. The discussion then turned to the Thomas hearing. According to Commissioner Zimpfer's testimony, appellant informed him that attorneys would not assist him in redressing his grievances because he had no money. He said that attorneys were mercenaries "similar to those in the American Revolution who were hired by England to fight the colonists." He added that the colonists killed mercenaries, and that he had a right to kill the mercenaries of today. Mr. Zimpfer is an attorney. Zimpfer testified further that appellant told him that the Commissioner, along with various law enforcement agencies, was his enemy, and he felt he had a right to kill all his enemies.

At this point appellant unzipped his jacket and removed a 9 mm. automatic pistol from a clip on his belt. He held it in the palm of his hand with the barrel pointing toward the Commissioner, and later placed it on his desk. The Commissioner testified that when appellant pulled the pistol, "my first thought was, my God, he's going to shoot me." After some further discussion, appellant left Zimpfer's office. The Commissioner's law partner and secretary both testified that the Commissioner emerged from his office after appellant left "white in the face * * * very shaken and very upset."

Appellant's version of the visit is quite different from that of the Commissioner. He testified that in regard to the Thomas matter, he told Commissioner Zimpfer

that he had willfully refused to uphold the Constitutions of the United States and Minnesota, that this constituted treason, and that treason carries the death penalty. According to appellant the discussion thereafter concerned enemies of the Constitution in general, with no specific reference to the Commissioner, and with no reference to personal enemies of the appellant. Appellant denied making the statement that he had a right to kill his enemies. He testified further that he removed the pistol only to show the Commissioner the clip to which it was attached, hoping to enlist the Commissioner's aid in securing a patent for the clip. Appellant stated that the pistol was on safety, and that he immediately placed it on the Commissioner's desk without pointing it at anyone. He further testified that the Commissioner at no time appeared frightened during the visit.

On the following day Commissioner Zimpfer caused a complaint to be sworn out against the appellant. A warrant of arrest was issued on the basis of the complaint and two United States Deputy Marshals, Robert L. Allie and James H. Redpath, and Special Investigator Robert L. Rhoades of the Alcohol and Tobacco Tax Division of the Treasury Department went to execute the warrant at the appellant's residence, the Wisconsin Hotel in Minneapolis. Deputy Marshal Allie was shot by the appellant while the three officers were attempting to make the arrest. Appellant testified that the officers burst into his room unannounced, and that there was insufficient light in the room for him to recognize the officers. The officers testified that Deputy Marshal Redpath announced his name and that he had a warrant for appellant's arrest at least three times before attempting to open the door. They further testified that on their first attempt to open the door, it opened only to the length of a night chain and then was quickly shut from the inside. They then broke into the room, whereupon the appellant fired a pistol and hit Allie. After the shooting of Allie, the local police were called and appellant was eventually subdued.

## I.

In attacking the jurisdiction of the trial court, appellant makes a novel argument. He points out that for several years he has attempted to prosecute certain actions against government agencies, state and federal, to obtain a "redress of grievances" for alleged violations of his rights. He claims that his rights were violated in 1956 when he was removed from his home to St. Mary's Hospital in Rochester, Minnesota for psychiatric observation, and subsequently committed to the Minnesota Mental Hospital at Moose Lake. He further alleges that his rights of religious liberty were violated during his confinement when he was required to take certain medical treatment against his will. Appellant tends to lump all governmental agencies into a single category. He asserts that his complaints against the State of Minnesota take precedence over the United States' complaints against him. Therefore, he argues that the court had no jurisdiction to try him on the indictment, since his complaints had not yet been processed.

We find this argument without merit. Appellant cites no authority for his point, nor has any been found by this court. It is clear that the fact that others are violating the law is no defense to a defendant in a criminal case. United States v. Rickenbacker, 309 F.2d 462, 464 (2d Cir. 1962), cert. denied, 371 U.S. 962, 83 S.Ct. 542, 9 L.Ed.2d 509 (1963); Grell v. United States, 112 F.2d 861, 875–876 (8th Cir. 1940); United States v. Manno, 118 F. Supp. 511, 515 (N.D.Ill. 1954). It seems equally clear that no person has the right to violate the laws of the United States with impunity pending disposition of unrelated claims he may think he has against various governmental agencies. This would be true even if the alleged claims were against the United States itself.

Appellant argues that the trial court erred in failing to dismiss Count II of the indictment, charging appellant with for-

cibly assaulting a United States deputy marshal while engaged in the performance of his official duties, in violation of 18 U.S.C.A. § 111. Appellant contends that the arrest was illegal, and therefore not within the scope of the marshal's official duties. It is argued that the signed complaint was insufficient to support a finding of probable cause for the issuance of the arrest warrant. Appellant challenges the sufficiency of the complaint on two grounds: (1) that it was based solely on hearsay; (2) that the facts related in the complaint failed to state an offense under the designated statute, 18 U.S.C.A. § 1503.

 It is true that the complaint was based on hearsay because it did not contain the personal knowledge of the signatory. The complaint was prepared by the office of the United States Attorney and signed by Special Investigator Rhoades, upon information given by Commissioner Zimpfer. Because of his personal involvement, Zimpfer chose not to sign the complaint himself. The warrant was issued on the basis of the complaint by another United States Commissioner, William H. Eckley. However, the fact that the complaint was based on hearsay is not alone sufficient to invalidate Commissioner Eckley's finding of probable cause. Probable cause may exist even though the complaint is based on hearsay "so long as a substantial basis for crediting the hearsay is presented." Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960); accord, United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Rugendorf v. United States, 376 U.S. 528, 532–533, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964). Indeed, hearsay may be sufficient even though the source of the information is an unidentified informant, so long as the affiant attests to the previous reliability of the informant. United States v. Freeman, 358 F.2d 459, 462–463 (2d Cir. 1966). We are confident that the complaint in this case satisfies the *Jones* requirement that there be a substantial basis for crediting the hearsay.

Here the informant was a United States Commissioner, an official who is himself normally charged with the responsibility for passing on complaints and issuing warrants. Moreover, the Commissioner was the only person other than the appellant who witnessed the events upon which the complaint was based. Therefore, if the appellant committed a crime during his private conversation with the Commissioner, there is no way other than by the word of the Commissioner that it could have been brought to the attention of the authorities. Under these circumstances, Commissioner Eckley was entitled to accept the complaint even though it was based on hearsay.

The appellant further contends that the facts related in the complaint were insufficient to support Commissioner Eckley's determination of probable cause. The fourth amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause * * *" The implementation of this constitutional guarantee is found in Rules 3 and 4 of the Federal Rules of Criminal Procedure. These rules require that the complaint be written and sworn, containing "a statement of the essential facts constituting the offense charged." Before issuing a warrant, the Commissioner must determine from the complaint "that there is probable cause to believe that an offense has been committed and that the defendant has committed it." The rules contemplate an independent examination of the complaint by an impartial magistrate who "must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause." Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503 (1958). Mere conclusions of the complaining officer are not enough. An adequate basis for a finding of probable cause must appear on the face of the complaint. Aguilar v. State of Texas, 378 U.S. 108, 112–116, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Giordenello v. United States, *supra* at 486–487, 78 S.Ct. 1245. However, it is not re-

quired that the complaint spell out each and every fact upon which the charge is founded. "It simply requires that enough information be presented to the Commissioner to enable him to make the judgment that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal process." Jaben v. United States, 381 U.S. 214, 224–225, 85 S.Ct. 1365, 1371, 14 L.Ed.2d 345 (1965).

■ We believe that the complaint in this case was adequate to allow such a judgment by Commissioner Eckley. Unlike the complaints in *Aguilar* and *Giordenello*, it states facts rather than mere conclusions of the complaining officer.[1] It identifies the informant, Commissioner Zimpfer, and states that on April 21, 1965, appellant entered the Commissioner's office, removed a pistol from his belt and placed it on the Commissioner's desk, and expressed his disapproval of the Commissioner's handling of the *Thomas* matter.[2] Although this is not as complete a statement of the occurrence as may be found in Commissioner Zimpfer's testimony at trial, we believe it contains enough to enable Commissioner Eckley to find probable cause to believe that appellant violated 18 U.S.C.A. § 1503.

■ Since we find the complaint adequate and the warrant properly issued, we need not determine whether an officer might be engaged in the performance of his official duties even if attempting to execute an invalid warrant. Warrants are often found invalid by courts for reasons not appearing on the

face of the document. For this reason marshals have been held immune from civil liability for wrongful execution of documents valid on their face. See Bryan v. Ker, 222 U.S. 107, 112–113, 32 S.Ct. 26, 56 L.Ed. 114 (1911); Matthews v. Densmore, 109 U.S. 216, 3 S.Ct. 126, 27 L.Ed. 912 (1883); Kercheval v. Allen, 220 F. 262 (8th Cir. 1915). We believe it is part of the official duties of a marshal, in criminal as well as civil cases, to execute all warrants which reasonably appear to be valid. At any rate, no person should be entitled to resist with deadly force a marshal operating under color of authority, even though it is later found that no actual authority existed. See Carter v. United States, 231 F.2d 232 (5th Cir.), *cert. denied*, 351 U.S. 984, 76 S.Ct. 1052, 100 L.Ed. 1498 (1956); Palmquist v. United States, 149 F.2d 352 (5th Cir.), *cert. denied*, 326 U.S. 727, 66 S.Ct. 33, 90 L.Ed. 431 (1945); *cf.* Armstrong v. United States, 306 F.2d 520 (10th Cir. 1962); Foster v. United States, 296 F. 2d 65 (5th Cir. 1962). Adequate legal protection exists against unlawful searches and arrests.

### II.

■ Appellant contends there was insufficient evidence to convict him of intimidating Commissioner Zimpfer. We disagree. Contrary to appellant's contention, we find no discrepancies between the complaint and the Commissioner's testimony which would cast doubt on the Commissioner's truthfulness. It is true that appellant had no way other than by his own word of overcoming

---

1. In *Aguilar*, for example, the relevant portion of the complaint reads as follows:

 Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law.

2. And the complainant states that this complaint is based on the statement of Bernard G. Zimpfer, United States Com-

missioner, which statement indicates that on and during the afternoon of April 21, 1965 said Robert Hodgdon, defendant herein, did enter said commissioner's office, 865 North Star Center, and did place on said commissioner's desk a .9 mm automatic pistol, which pistol said defendant did withdraw from his belt which was concealed under his coat, and did advise said commissioner that he didn't approve of the way said commissioner handled a matter which had been pending before him, to wit, matter involving Louis Alvin Thomas.

the Commissioner's testimony. However, it is obvious that we cannot reverse simply because the jury chose to believe the Commissioner. It is not our duty to interfere with the jury's findings of fact.

## III.

 Appellant argues that the United States District Court for the District of Minnesota was biased against him because officers of the court were involved in the case. We find this contention without merit. In the first place appellant failed to sign the affidavit of bias required by 28 U.S.C.A. § 144. More important, however, is that appellant displays no foundation whatever for his charge of bias. The bias contemplated by 28 U.S.C.A. § 144 is a personal bias, extrajudicial in origin, that a judge may have against a particular defendant. Lyons v. United States, 325 F.2d 370 (9th Cir. 1963), *cert. denied*, 377 U.S. 969, 84 S.Ct. 1650, 12 L.Ed.2d 738 (1964); Ferrari v. United States, 169 F.2d 353 (9th Cir. 1948); United States v. Garden Homes, Inc., 113 F.Supp. 415 (D.C.N.H. 1963), *aff'd*, 210 F.2d 281 (1st Cir. 1964). That officers of the court were involved in the case, or that appellant had in the past attempted to initiate unrelated judicial proceedings against the court, is far from enough to establish such personal bias. Moreover, a reading of the entire record discloses not one single instance that could be interpreted as bias against the appellant. The court was very fair and commendably patient with appellant throughout the trial.

## IV.

 We cannot agree that appellant's right to a speedy trial under the sixth amendment was violated. Appellant was arrested on April 22, 1965, and was brought to trial on October 29, 1965, a period of about six months. For about six weeks of that period, starting on May 18, 1965, appellant was at the Medical Center for Federal Prisoners, Springfield, Missouri, undergoing psychiatric examination. The right to a speedy trial is relative, depending on the circumstances in each case. Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957); Burns v. Harris, 340 F.2d 383, 387 (8th Cir.), *cert. denied*, 382 U.S. 960, 86 S.Ct. 439, 15 L.Ed.2d 363 (1965). Here the delay was about four and one-half months, not counting the time appellant spent in psychiatric examination. There is nothing to indicate that the delay was either purposeful or oppressive. See Pollard v. United States, *supra*. Under the circumstances, there was no violation of appellant's right to a speedy trial.

## V.

Appellant contends that he was unable adequately to prepare his defense because his bail was excessive and because he was not provided with certain legal materials. It is apparently appellant's contention that he must either be provided with the legal materials he desires, or let out on bail where he can procure them on his own. It is not clear from the record whether the books appellant wanted were not available, or whether they were being used by someone else at the times he requested them. A legal workroom was available during his confinement. We agree with appellant that it is unfortunate that complete legal reference cannot be made available at all times to all prisoners. Particularly serious are appellant's charges that he was unable to obtain a copy of the United States Constitution, and that he did not have access to copies of the statutes under which he was indicted until the day before he went to trial. Nevertheless, appellant was appointed competent counsel, and it appears from the record that he was more than adequately prepared to defend himself at trial. Appellant somewhere found the time and resources to compile a list of sixty-five reasons why he should be released, upon which he expounded at length, and which took close to fifty pages of the record.

We cannot say that the bail, in the sum of $50,000.00, was excessive. Rule 46(a) (1), (c), Fed.R.Crim.P., provides that bail shall be sufficient to "insure the presence of the defendant, having regard to the nature and circumstances of the offense charged, the weight of the evidence against him, the financial ability of the defendant to give bail and the character of the defendant." Thus, bail is not excessive merely because the defendant is unable to pay it. White v. United States, 330 F.2d 811 (8th Cir.), *cert. denied* 379 U.S. 855, 85 S.Ct. 105, 13 L.Ed.2d 58 (1964); Pilkinton v. Circuit Court, 324 F.2d 45 (8th Cir. 1963). "The purpose for bail cannot in all instances be served by only accommodating the defendant's pocketbook and his desire to be free pending possible conviction." White v. United States, *supra*, 330 F.2d at 814. Here appellant displayed an unpredictable nature and a penchant for carrying firearms. The two offenses with which he was charged involved the violent use of those firearms. The bail was large, but considering the "nature and circumstances of the offense charged," and "the character of the defendant," we do not believe it was excessive.

### VI.

We find appellant's final contention, regarding the exclusion of certain exhibits from the files of the Minnesota Mental Hospital at Moose Lake, without merit. The exhibits were apparently intended to show efforts by the appellant to learn of and protect his legal rights while confined at the hospital. It is not clear from the record for what reason the exhibits were excluded. Their relevance would seem to be questionable. However, we need not determine whether the exclusion was error for, if so, the error was harmless. The record is replete with testimony concerning appellant's efforts to protect his rights.

The judgment is affirmed.