**UNITED STATES of America,**
**Appellee,**

v.

**David EBERHARDT, Appellant.**

**UNITED STATES of America,**
**Appellee,**

v.

**Thomas LEWIS, Appellant.**

**UNITED STATES of America,**
**Appellee,**

v.

**Philip BERRIGAN, Appellant.**

**UNITED STATES of America,**
**Appellee,**

v.

**James MENGEL, Appellant.**

Nos. 12471, 12492, 12499, 12503.

United States Court of Appeals
Fourth Circuit.

Argued June 10, 1969.

Decided Oct. 15, 1969.

See also D.C., 283 F.Supp. 336, 417 F.2d 1002.

Fred E. Weisgal, Baltimore, Md. (court-appointed counsel), for appellants.

Barnet D. Skolnik, Asst. U. S. Atty. (Stephen H. Sachs, U. S. Atty., and Donald E. Sharp, Asst. U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and WINTER, Circuit Judges.

SOBELOFF, Circuit Judge:

For approximately one week the four appellants, Father Philip Berrigan, Thomas Lewis, David Eberhardt and Reverend James Mengel, planned the acts for which they stand convicted. Then on October 26, 1967, they extracted a small quantity of blood from each of them and placed it in a number of pint-sized bottles. On the morning of October 27, they added a quantity of animal blood so as to increase the total volume to approximately three pints. They then proceeded to a location directly across the street from the Customs House in Baltimore, Maryland, where they met members of the press who had been informed in advance by the appellants that a newsworthy event was to take place. The appellants distributed to the newsmen a jointly prepared press release concerning what they were about to do.

Instructing the press to follow them after the lapse of one minute, they entered the Customs House. Once inside the draft board offices, the appellants Berrigan, Lewis and Eberhardt walked beyond the counter, opened cabinets containing Selective Service files and poured the prepared blood mixture over the documents. These three then joined appellant Mengel, who had been engaged in distributing Bibles in the office reception area while the blood pouring took place. They then waited for law enforcement authorities to arrive.

A jury in the United States District Court for the District of Maryland convicted Father Berrigan, Lewis and Eberhardt of (1) causing willful injury to property of the United States to an amount in excess of $100, (2) willful mutilation of records filed in a public office of the United States, and (3) willfully hindering the administration of the Military Selective Service Act.[1] Appel-

---

1. Title 18 U.S.C. § 1361 provides:
    Whoever willfully injures or commits any depredation against any property of the United States, or of any department or agency thereof, or any property which has been or is being manufactured or constructed for the United States, or any department or agency thereof, shall be punished as follows:
    If the damage to such property exceeds the sum of $100, by a fine of not more than $10,000 or imprisonment for not more than ten years, or both; if the damage to such property does not

lant Reverend Mengel was convicted under the same statutes as an aider and abettor.[2]

The appellants base their appeal upon five asserted errors in the District Court proceedings.

## I

The defendants were permitted to present evidence that their actions were taken pursuant to a good faith belief in the immorality and illegality of the Vietnam War, but they were not allowed to present expert testimony as to the reasonableness of these beliefs. They maintained below and in this court that because of these beliefs their actions were justified. The Government does not contest the sincerity of the appellants' belief that the United States involvement in Vietnam is illegal[3] and immoral. However, the trial court refused to treat this belief as a possible negation of criminal intent. We find no error in the trial court's ruling. For a more complete discussion of this issue, see United States v. Berrigan, et al., 4 Cir., 417 F.2d 1002, decided this day.

## II

Appellant Rev. James Mengel, who did not participate in the actual splattering of blood on the Selective Service files, submits a special argument that since the count charging a conspiracy between the four co-defendants was dropped, all other charges against him should also have been abandoned because his participation was insufficient to sustain the conviction as an aider and abettor.

This argument is without foundation, for the record reveals sufficient evidence to classify Mengel as an aider and abettor in the offenses charged. If he had done no more than stand by silently while the others acted, without himself actually participating in the preparations, then he could not be considered an aider or abettor,[4] even if he sympathized with their action. However, he was an actual participant, lending physical as well as moral support to his associates. He assisted in the planning of the incident, contributed his blood, signed the press release

---

exceed the sum of $100, by a fine of not more than $1000 or by imprisonment for not more than one year, or both.

Title 18 U.S.C. § 2071 provides:

(a) Whoever willfully and unlawfully conceals, removes, mutilates, obliterates, or destroys, or attempts to do so, or, with intent to do so takes and carries away any record, proceeding, map, book, paper, document, or other thing, filed or deposited with any clerk or officer of any court of the United States, or in any public office, or with any judicial or public officer of the United States, shall be fined not more than $2,000 or imprisoned not more than three years, or both.

Title 50 App.U.S.C. § 462(a) provides in pertinent part:

* * * or any person or persons who shall knowingly hinder or interfere or attempt to do so in any way, by force or violence or otherwise, with the administration of this title (said sections) or the rules or regulations made pursuant thereto, or who conspires to commit any one or more of such offenses, shall, upon conviction

in any district court of the United States of competent jurisdiction be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment, * * *.

2. Title 18 U.S.C. § 2 provides:
    (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, or induces or procures its commission, is punishable as a principal.
    (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

3. Although defendants assert their belief in the illegality of the Vietnam War, they expressly state in their brief that "we do not urge that the court should or could have undertaken any determination of the legality of the Vietnam War." (Brief for Appellants, p. 19).

4. Nye and Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949).

and accompanied the others to the Customs House.

Mengel's mere giving of blood with the knowledge that it would be used for an unlawful purpose would be enough to convict him as an aider and abettor. Just as one may not supply a weapon to another with knowledge that it will be used to commit a crime, here the appellant could not with impunity give his blood knowing the unlawful purpose to which it would be put. His total course of action makes it clear that he was integrally a participant in the blood-pouring protest.

### III

All of the appellants argue that the evidence fell short of showing a violation of any of the statutes mentioned in the indictment. With regard to 18 U.S.C. § 1361, they assert that the damage did not exceed $100, in which case the maximum imprisonment would be one year.[5] The proof that the damage did exceed $100 was made by calculating the cost of labor expended in restoring the damaged records to their former condition. Surely this method of computation is reasonable and proper for the jury to consider.

It is protested on behalf of all the appellants that the evidence failed to show a violation of 50 App. U.S.C. 462(a). Again, the evidence supports a finding that the appellants "hinder[ed]" or interfer[ed]" with the operation of the Selective Service System "or attempted to do so." As the record shows, many Government employees were disrupted in their work both during and after the bloodpouring. Among other results, one of the local draft boards was unable to have an induction call for several months after the incident. Restoration of the damaged records involved the expenditure of a number of man hours which would otherwise have been devoted to the normal business of the boards. The value of this time was well in excess of the $100 minimum required to make the defendants amenable to the higher penalty.

Also incorrect is the appellants' position that the statute requires a showing of "force or violence." The statute clearly states that the hindering or interfering may be accomplished by "force or violence or otherwise." The words "or otherwise" were added by section 12 of the Selective Service Act of 1948 [6] evincing a plain intention to relieve the prosecution from the obligation to prove the use of agressive force or violence.

### IV

The appellants complain that the trial judge's refusal of a continuance of the trial until the end of hostilities in Vietnam, or at least for six months, denied them a fair trial. They claim that widespread prejudice existed in the community against anti-war protestors, and this prejudice, in the context of a trial for political civil disobedience, would likely focus upon them in a particularly severe fashion.

To support these allegations the defendants submitted evidence of a poll which they had taken to show the prevalence of community prejudice against persons protesting the war. They also offered witnesses who testified that they had encountered personal hostility in their dissentient activities against the war. The witnesses were permitted to express the opinion that hostility toward dissenters was general throughout the nation.

---

5. Father Berrigan and Thomas Lewis were sentenced to imprisonment for six years under this section. David Eberhardt was sentenced to three years under this section and James Mengel was committed to the custody of the Attorney General for study and report, pursuant to Title 18 U.S.C. § 4208(b). All of these sentences were within the statutory limit of ten years if the damage exceeded $100; but if the damage was less the maximum permissible prison term could not exceed one year.

6. 63 Stat. 622.

However, the results of the poll and the other testimony of defense witnesses did not convincingly establish that the prejudice against war protestors was so obdurate as to make unlikely the selection of a fair jury after extensive *voir dire*. Over 100 veniremen were individually and painstakingly examined, and more than 60 challenges for cause were upheld. Furthermore, the defendants' expert witness, Dr. Peter H. Rossi, whose qualifications were not challenged, testified that the poll showed an ambivalent community attitude toward political protestors, the same individuals feeling prejudice some days and entertaining more tolerant attitudes other days. In this state of the record, the trial judge certainly cannot be said to have abused his discretion in deciding (1) that a continuance was not necessary to protect the defendants' right to a fair trial and (2) that a fair jury could be selected through carefully conducted *voir dire*. The jury was selected and the trial proceeded.

■ The trial was interrupted for five days due to the race riots in Baltimore following the assassination of Dr. Martin Luther King, Jr., and the appellants press upon us that a mistrial should have been declared. If it had appeared reasonably likely that the jury might impute the acts of the race rioters to war protestors, or even that in the sight of the community race rioters and antiwar protestors are indistinguishable, then this argument might have some merit. However, though suggested in argument, there was no evidence to prove this relationship. Moreover, when the trial resumed, the judge made careful inquiry of the jurors to ascertain whether the events of the preceding several days would have any effect upon their ability to try the case in accordance with their oath. From the responses the judge meticulously elicited from the jurors, he was satisfied that the events in question would not affect their impartiality. There is nothing to suggest that the jurors were inflamed by passion or prejudice against war resistors, or that any of them felt such a degree of resentment or impatience as to impair unbiased judgment. "Appellate courts should be slow to impute to juries a disregard of their duties * * *." Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 485, 53 S.Ct. 252, 77 L.Ed. 439.

V

■■ Finally, the appellants attack the sentences imposed upon them. They contend that all of the appellants received sentences unreasonably severe and disproportionate to the acts they committed and to their background. They insist that this severity was visited upon them in order to punish the "speech" element of their conduct, which is protected by the First Amendment. The contention is not soundly posited. If one elects to engage in conduct as symbolic speech he must limit himself to lawful conduct; he is not entitled to commit criminal acts with impunity, even in order to communicate ideas. The trial judge is vested with broad discretion in sentencing. If the sentence he meets out is within statutory limits, it will not, in the absence of exceptional circumstances, be reviewed on appeal. United States v. Pruitt, 341 F.2d 700 (4th Cir. 1965); United States v. Martell, 335 F.2d 764 (4th Cir. 1965).[7]

After the trial of this case, but before sentence, appellants Berrigan and Lewis participated in another extreme viola-

---

7. See, Report of the Administrative Committee on Sentencing and Review, American Bar Association Project on Minimum Standards for Criminal Justice (Approved 1968) recommending appellate review of sentences. In the 90th Congress a measure authorizing appellate review of sentences was passed by the Senate, but was not reported out of the House Committee. At the present session Senator Hruska introduced a similar bill (S. 1561) which is now pending before the Subcommittee on Criminal Laws and Procedures.

tion—the destruction by burning of draft board records in Catonsville, Maryland. See United States v. Berrigan, et al., 417 F.2d 1002, decided this day. The appellants point out that Father Berrigan and Thomas Lewis were given longer sentences than the other defendants in this case, and they attribute the disparity to the trial judge's purpose to punish these two not alone for the acts for which they were convicted before him, but also for their subsequent war protesting activities.

When the District Judge passed sentence, he was of course aware of the episode in which some of the defendants had become involved since the trial over which he presided. In fixing sentence he certainly was not obliged to ignore the later event. Subsequent misconduct has evidentiary value in determining the period of confinement anticipated to be required to effect the purposes of the sentence. Yet it is true that he could sentence only for the offense of which the defendants had been convicted, for if he undertook to penalize them for the other offense as well, it would run afoul of due process, if not double jeopardy. State of Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 462, 67 S.Ct. 374, 91 L.Ed. 422 (1947); Ex parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873). Precisely what passed through the judge's mind is purely speculative and we have no reason to think that the judge undertook to impose a penalty for the second offense. However, we consider it fair and in the interest of justice in this instance to remand the case to the District Court for further consideration of the sentences, and the judge may determine in his discretion whether the sentences should be reduced in the light of our statement of the law, or for any other reason for which the judge may reduce sentences under Rule 35, Fed.R.Crim.P.

Therefore, the convictions are affirmed and the case is remanded for further consideration of the sentences.