**UNITED STATES of America,**
Appellee,

v.

**Charles Larry TURCHICK and William Leo Tilton, Appellants.**

**No. 71-1007.**

United States Court of Appeals, Eighth Circuit.

Oct. 19, 1971.

Rehearing Denied Nov. 4, 1971.

334

Kenneth E. Tilsen, St. Paul, Minn., for appellants.

Robert G. Renner, U. S. Atty., Minneapolis, Minn., for appellee.

Before LAY, HEANEY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Charles Larry Turchick, William Leo Tilton, and Clifton Ulen, protestors against American involvement in the Vietnam conflict, broke into the Selective Service headquarters of Local Board 21 located in Alexandria, Douglas County, Minnesota. Agents of the Federal Bureau of Investigation, acting on the basis of information supplied by an informer or informers, arrested the trio in the draft board office shortly after the break-in. All three were indicted for knowingly attempting to interfere with or hinder by force or violence the administration of the Selective Service Act

of 1967, in violation of 50 U.S.C. App. § 462(a).[1]

On the eve of the trial, Ulen indicated his intent to plead guilty to the charge, and his case was severed from that of the other two defendants. Turchick and Tilton were jointly tried, convicted by a jury and sentenced to serve five years.

In this appeal, appellants Turchick and Tilton urge as their principal grounds for reversal (a) that the evidence was insufficient to sustain their conviction, and (b) that the trial court committed prejudicial error in overruling appellants' motions to discover the identity of the person or persons who provided the government with the information that led to appellants' arrest.

We first consider the government's proof of the elements contained in the indictment. FBI agents, having received advance notice of appellants' actions, placed them and the Alexandria draft board office under surveillance on July 10, 1970. The testimony, which is undisputed, showed that appellants Turchick and Tilton, along with Ulen, climbed to the roof of the building housing the draft board office and then gained entrance to the interior of the building by cutting a screen and opening the window behind the screen. The three then cut out a glass window in the doorway to the draft board office and entered the office at approximately 12:25 a. m. on July 11, 1970. Ten minutes later, FBI agents arrested the three. At that time they carried no identification papers on their person and refused to identify themselves to the arresting officers. They had brought the following items into the draft board office: pliers, prybar, hammer, screwdrivers, pocketknife, glasscutter, micro-flame torch with cylinders of oxygen and butane, an Army field pack, roll of plastic garbage bag liners, wire ties for liners and a can of black paint, as well as other miscellaneous items. The arresting officers found three file cabinet drawers ajar. The evidence introduced at trial showed that some papers from the desk drawers had been disturbed. They had neither removed nor had they destroyed any draft board files.

The executive secretary of the draft board, having been previously informed of a possible break-in, removed certain records from the office, as well as taking off the identification tabs from the face of the file cabinet drawers. Appellants argue here, as they did in the trial court, that since the evidence showed no destruction of the records in the draft board office, the government had failed to establish an essential element of the charge contained in the indictment— that they attempted to interfere with or hinder the administration of the Selective Service Law by removing and destroying the official records of the Douglas County Draft Board. Appellants contend that the record indicates other possible reasons for their entry into the Selective Service headquarters, such as: (a) The defendants called the FBI in order to get arrested and publicize their views; (b) the defendants were interested in getting the names of everyone eligible for the draft in one particular area in order to contact those persons and deal with them in depth; (c) the defendants were laying the groundwork for a sit-in in the local draft board; or (d) the defendants were attempting to engage in a general protest against the conduct of the Vietnam War and the Selective Service System.

---

1. 50 U.S.C.App. § 462(a) provides in pertinent part:

[A]ny person or persons who shall knowingly hinder or interfere or attempt to do so in any way, by force or violence or otherwise, with the administration of this title [said sections] or the rules or regulations made pursuant thereto, or who conspires to commit any one or more of such offenses, shall, upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment * * *.

■ Their furtive entry into the draft board office, carrying the means to remove or destroy draft board records, furnished the jury with an appropriate basis upon which to find the defendants guilty as charged in the indictment. In United States v. Porter, 441 F.2d 1204 (8th Cir. 1971), Judge Lay, speaking for this court, noted:

> Intent can seldom be shown by actual testimony reflecting a defendant's state of mind. The cases are legion that intent may properly be inferred from all the facts and circumstances surrounding the transactions. [441 F.2d at 1210]

We hold the evidence sufficient to sustain the conviction.

We next turn to appellants' contentions relating to disclosure of informants. The record demonstrates that prior to the commencement of the trial the government declared its intention of not calling its informer or informers to testify in the case. The trial court rejected all efforts of appellants to learn the identity of the informer or informers. Appellants speculate that either their codefendant Ulen or associates of theirs who are charged with similar crimes for breaking into other Selective Service offices in the State of Minnesota on the same date and who collaborated with them in the defense of the instant case, had served the government as informers. Based on these propositions, they argue: (a) that the informer could have furnished valuable evidence to show that appellants did not intend to remove or destroy draft board records, or (b) that such informer might have been privy to confidential information between attorney and client to the extent that appellants' Sixth Amendment rights to effective counsel was vitiated in these proceedings.

In its brief, the government asserted that it had not used information received from its informer in derogation of appellants' Sixth Amendment rights.[2] Counsel for the government has supplemented this representation by an affidavit submitted to this court in camera. This court is satisfied that appellants' Sixth Amendment rights have not been breached.

The question of whether or not the name of any informer should have been disclosed to provide appellants with a material witness presents a more difficult problem. Our decision on this issue is controlled by Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L. Ed.2d 639 (1957). In that case, involving a narcotics violation, the informer, identified only as John Doe, participated with the defendant in the allegedly unlawful possession and transportation of heroin. Appellant there argued the necessity of disclosure due to the possible materiality of the informer's testimony on the question of unlawful intent. The Court reversed the conviction. In doing so, it recognized the government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law, and that the purpose of the privilege is the " * * * furtherance and protection of the public interest in effective law enforcement." 353 U.S. at 59, 77 S. Ct. at 627. The Court further noted that there is a special limitation on the applicability of the privilege arising from the fundamental requirement of fairness. It said:

> Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these

---

2. In his brief, the United States Attorney made the following representation:

> We further categorically state we have not been privy to any information concerning trial tactics or conversations or consultations between defend-

ants and their counsel. We have never received any such information from anyone. We agree it would be most inappropriate and unconscionable should this have been the case. [Appellee Br. 13]

situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action. [353 U.S. at 60–61, 77 S.Ct. at 628]

Relying on the above language, appellants make the following argument for requiring disclosure of the identity of the informer: The informer, if he was a participant in any of the events relative to the invasion of the Alexandria draft board office, would possess information concerning intent—whether appellants sought to remove or destroy records of the Selective Service System or whether they intended to confine their activities to peaceful protest after entry.

As we have already noted, although appellants used force in entering the draft board office, they claim several alternatives of peaceable protest in explaining the possible ultimate purpose for their entry. Using these suggestions as a springboard, appellants submit that the informer, if available as a witness, might testify that appellants broke into the Alexandria office of the draft board without any purpose of destroying or carrying away the records therein.

■ The problem with this litany is that such testimony, if presented, falls short of absolving defendants from violating the statute in question which proscribes conduct of those "who shall knowingly hinder or interfere or attempt to do so in any way, by force or violation or otherwise, with the administration of this [Act]. * * *" 50 U.S.C. App. § 462(a). In this appeal we need not decide whether peaceful protest alone conducted within the office of a draft board violates the law, but we think it clear from the text of the Act that forceful breaking into such an office followed by peaceful protest through occupation of such office does not fall outside the prohibition of this statute. *See* United States v. Eberhardt, 417 F.2d 1009, 1013 (4th Cir. 1969), cert. denied, 397 U.S. 909, 90 S.Ct. 907, 25 L.Ed.2d 90 (1970); United

States v. Chase, 309 F.Supp. 430 (N.D. Ill.), vacated on other grounds, 435 F.2d 1059 (7th Cir. 1970).

Appellants' statement of need is far different from that shown in *Roviaro* where the Court noted:

So far as Petitioner knew, he and John Doe were alone and unobserved during the crucial occurrence for which he was indicted. Unless petitioner waived his constitutional right not to take the stand in his own defense, John Doe was his one material witness. * * * Doe had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity or on the identity of the package. He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package that he "transported" from the tree to John Doe's car. [353 U.S. at 64, 77 S.Ct. at 629]

*Roviaro* applies a balancing test of public interest versus private right. The Court stated:

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. [353 U.S. at 62, 77 S.Ct. at 628]

This court has applied those standards in a flexible manner. *See and compare* Churder v. United States, 387 F.2d 825 (8th Cir. 1968), second appeal, 417 F.2d 633 (8th Cir. 1969); Miller v. Sigler, 353 F.2d 424 (8th Cir. 1965), cert. denied, 384 U.S. 980, 86 S.Ct. 1879, 16 L.Ed.2d 690 (1966); White v. United

States, 330 F.2d 811 (8th Cir.), cert. denied, 379 U.S. 855, 85 S.Ct. 105, 13 L. Ed.2d 58 (1964), *with* Cochran v. United States, 291 F.2d 633 (8th Cir. 1961).

In applying this balancing test in the instant case we are mindful of the contention made by the government that the informer here fears physical harm should his identity be disclosed. *See* United States v. Drew, 436 F.2d 529, 534 (5th Cir. 1970), cert. denied, 402 U. S. 977, 91 S.Ct. 1682, 29 L.Ed.2d 143 (1971); Gonzales v. Beto, 425 F.2d 963, 971 (5th Cir.), cert. denied, 400 U.S. 928, 91 S.Ct. 194, 27 L.Ed.2d 189 (1970); *cf.* United States v. Briddle, 443 F.2d 443 (8th Cir. 1971). We observe also that even if the specific purpose of the appellants' entry into the headquarters of the draft board were material to the issue of guilt under the particular indictment in this· case, the existence of garbage can liners useful as containers for carrying out records, and the presence of paint, microflame torch, cylinders of oxygen and butane found in appellants' possession upon apprehension stands as mute testimony militating against appellants' contention that an informer would testify to a "peaceful invasion" of the draft board headquarters.

■ From our review of the record we are satisfied that appellants' request for disclosure should be denied. They fail to demonstrate within the context of *Roviaro* either sufficient need for the identification of the informer in defending the action or, in fact, any prejudice to their case by the government's failure to disclose.

■ Appellants raise other contentions, several of which merit brief discussion. Appellants allege that the district court unduly restricted appellants' cross-examination of government witnesses. It is apparent that the testimony that appellants sought to elicit was neither material nor relevant to their defense.[3] The range of inquiry upon cross-examination rests within the sound discretion and reasonable judgment of the trial court. Appellants demonstrate no abuse of discretion in this case.

Appellants argue that the United States Attorney was guilty of misconduct in his closing argument by making extended reference to the sentencing process. In his closing argument, appellant Tilton, who was acting as attorney pro se, said:

> [T]he Government wants to send us to jail for up to five years on mere conjecture, mere conjecture on what we intended to do, and I think that it's your duty to act on our behalf. * * * [Tr. 427]

The United States Attorney retaliated by saying:

> There is one man who sends them to jail, and that is the judge and how. he does it, usually, almost invariably, after an extensive, exhaustive study of a man's background, whether or not it will benefit him, what benefits there would be to society——it is an exhaustible list of areas that are studied prior to this being done, if it is even going to be done. There are so many other alternatives that are possible. Ordinarily I never talk to any jury about punishment because it is not involved. [Tr. 445]

■ While we disapprove of the prosecutor's remarks, we do not believe they necessitated a mistrial. We note that the trial judge, in his instructions to the

---

3. The following are representative of questions appellants sought to ask of prosecution witnesses:

    Defendant Tilton: Do you ever concern yourself or investigate crimes such as genocide? [Tr. 190]

    Defendant Tilton: How many people from that area (Alexandria) have died in Vietnam? [Tr. 301]

    Attorney Tilsen: Has anybody in the year 1969 or 1970 in Douglas County asked for a conscientious. objector status? [Tr. 346]

    Attorney Tilsen: Was it granted or denied? [Tr. 346]

jury, commented upon the irrelevant contentions of both sides in their closing arguments, and admonished the jury with particularity as to its limited responsibility in making a determination of guilt or innocence under the standards of law contained in the court's instructions. Broad discretion exists in the trial court in controlling arguments, and its determination in that regard will not be upset absent a clear abuse of discretion. United States v. Leach, 429 F. 2d 956 (8th Cir. 1970); Koolish v. United States, 340 F.2d 513 (8th Cir.), cert. denied, 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724 (1965); Blauner v. United States, 293 F.2d 723 (8th Cir.), cert. denied, 368 U.S. 931, 82 S.Ct. 368, 7 L.Ed. 2d 193 (1961); Brennan v. United States, 240 F.2d 253 (8th Cir.), cert. denied, 353 U.S. 931, 77 S.Ct. 718, 1 L.Ed. 3d 723 (1957).

Appellants also contend that the district court's instructions to the jury were in part improper and prejudicial. In reviewing the instructions as a whole, we find no error. We have also considered the other issues raised by appellants [4] and find them to be without merit.

Affirmed.

## ON PETITION FOR REHEARING

Appellants claim that their contentions relating to the impropriety of the trial court's instructions have not had our full consideration. Appellants specifically ask for an answer to the following question:

Is it reversible error for the trial court to fail to instruct the jury that the defendant has no burden or duty of calling any witnesses or producing any evidence?

Of course, the answer to that question generally is yes, but here the district court's instruction properly enunciated the duty, although not in the exact language requested by defendants. On this subject, we quote from the transcript:

The law presumes a defendant to be innocent of crime. Thus, these defendants, although accused, begin this trial with a clean slate, so-to-speak, with no evidence against them. This is called presumption of innocence, and I advise you that this presumption of innocence alone is sufficient to acquit a defendant unless from all of the evidence in the case you jurors are satisfied beyond a reasonable doubt of the guilt of each of these defendants.

What is a reasonable doubt? It is a fair doubt based upon reason and common sense and arising from the state of the evidence. Proof beyond a reasonable doubt is established if the evidence is such as you would be willing to rely upon in the most important of your own affairs. A verdict of guilty must be based on substantial evidence which leaves you with an abiding conviction that that particular defendant is guilty.

A reasonable doubt may arise not only from the evidence presented, but also from a lack of evidence. *The burden is upon the prosecution to prove the accused guilty beyond a reasonable doubt of every essential element of the crime charged. And so a defendant has the right to rely upon the failure of the prosecution to establish such proof.*

A defendant may also rely upon evidence brought out on cross-examina-

---

4. These issues are:
(a) Whether the courtroom atmosphere prevented a fair trial.
(b) Whether a presumption exists that the government utilized clandestine methods to obtain evidence.
(c) Whether the prosecutor was guilty of misconduct (other than as discussed in the text of this opinion) in his closing argument.
(d) Whether Judge Devitt, having recused himself in a connected criminal prosecution against other defendants, should, therefore, have disqualified himself in this case.

tion of the witnesses for the Government. *A defendant need not prove his innocence.* (Tr. 450–51) (Emphasis added)

Appellants have also made several other contentions relating to the instructions; i. e., that the trial court committed prejudicial error in instructing on reasonable doubt, in instructing on burden of proof, in instructing on specific intent, in summarizing defendants' case, in commenting upon the failure of law enforcement officers to arrest defendants at an earlier time than they did, and in failing to instruct the jury on evidentiary inferences to be taken against the government for its failure to produce or call certain witnesses.

Within the context of this case and after examining the instructions as a whole, we also find these further contentions without any merit. No useful purpose would be served by extending this opinion by quoting the trial court's instructions in their entirety and we decline to do so.

Appellants in their petition for rehearing, however, state that the court's discussion of certain "principal" issues did not properly reflect appellants' characterization of their relative importance. Accordingly, we modify the third paragraph of our opinion. It shall now read as follows:

> In this appeal, appellants Turchick and Tilton urged the following, which we deem as the principal grounds which might require a reversal, (a) that the evidence was insufficient to sustain their conviction, and (b) that the trial court committed prejudicial error in overruling appellants' motions to discover the identity of the person or persons who provided the government with the information that led to appellants' arrest.

In all other respects, we deny the petition for rehearing.