561 F.2d 719
 Charles Larry TURCHICK, Appellant,
v.
UNITED STATES of America, Appellee.
 No. 76-1575.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 14, 1977.
Decided April 12, 1977.
 
 Charles Turchick, pro se.
 Robert G. Renner, U. S. Atty., and Daniel M. Scott, Asst. U. S. Atty., Minneapolis, Minn., for appellee.
 Before CLARK, Associate Justice, Retired,* HEANEY and WEBSTER, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 Charles Larry Turchick was indicted in September, 1970, and charged with violating 50 U.S.C. App. § 462(a) by hindering or interfering with the administration of the Selective Service System.[1] He was tried, convicted by a jury and sentenced to five years in prison. On appeal to this Court, his conviction was upheld. United States v. Turchick, 451 F.2d 333 (8th Cir. 1971). Turchick began serving his sentence on November 30, 1971, and was released on parole in July, 1973. In May, 1976, Turchick filed a petition for post-conviction relief pursuant to 28 U.S.C. § 2255. He argued that § 462(a) is unconstitutional on its face and was unconstitutionally applied in obtaining his conviction. By order filed on June 11, 1976, the District Court denied relief on the ground that the jury could not have based its verdict upon any statements or actions protected by the Constitution. Turchick now appeals the denial of his claim that the challenged section is unconstitutional on its face. We affirm the decision of the District Court.
 
 
 2
 The principal issue raised by Turchick's petition is whether § 462(a) is unconstitutionally overbroad in its proscription of expressive activity. A statute is overbroad in constitutional terms if it comprehends a substantial range of applications to activity protected by the First Amendment, in addition to the unprotected activities it legitimately prohibits.[2] The aim of facial overbreadth analysis[3] is to eliminate the deterrent or " chilling" effect an overbroad law may have on those contemplating conduct protected by the First Amendment. Removing this disincentive to expressive activity is undertaken primarily for the benefit of persons not before the court. For this reason, courts applying the facial overbreadth doctrine have traditionally been unconcerned with whether the activities of the overbreadth claimant fall within the statute's lawful scope.[4]
 
 
 3
 I. The Impact of Broadrick.
 
 
 4
 Before addressing the substance of Turchick's overbreadth claim, we must consider the issue of standing and its relationship to the merits of his case. Viewed conceptually, Turchick's petition raises a standing issue in addition to his overbreadth claim. Recent Supreme Court decisions suggest that it is difficult to consider the two issues separately because the standing of an overbreadth claimant cannot be determined without some reference to the merits of the case. Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). See also Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972) (Burger, J., dissenting); Note, Overbreadth Review and The Burger Court, 49 N.Y.U.L.Rev. 532, 533-543 (1974) (hereinafter cited as Burger ). In Broadrick, the Court held that an overbreadth claimant will be denied standing unless he can show that the provision which he challenges is "substantially overbroad." Broadrick v. Oklahoma, supra 413 U.S. at 615, 93 S.Ct. 2908. See Burger, supra at 539; Note, The Supreme Court, 1972 Term, 87 Harv.L.Rev. 1, 150 (1973). To comply with the dictates of Broadrick, we must consider the extent of a challenged statute's overbreadth during our standing analysis. Although all questions of standing inevitably require some prejudgment of the merits, Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970) (Brennan and White, JJ., concurring in the result and dissenting); see also Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), it is clear that the Broadrick Court fully considered the merits of the overbreadth contention. See Broadrick v. Oklahoma, supra 413 U.S. at 615-618, 93 S.Ct. 2908.
 
 
 5
 While some characterize Broadrick as a standing case, Note, The Supreme Court, 1972 Term, supra, others regard it as focusing on the merits of the overbreadth claim.[5] Burger, supra at 540-550. In our view, characterization is unimportant. The standing and merit issues are so interrelated under the Broadrick test that no real purpose is served by attempting to analyze them separately.
 
 
 6
 II. The Overbreadth Claim.
 
 
 7
 The Broadrick decision implies that a finding of substantial overbreadth is necessary only when the challenged statute regulates conduct and not speech.[6] Since the statute challenged by Turchick clearly regulates conduct, the Broadrick test of substantial overbreadth is appropriate.[7]
 
 
 8
 Before considering the extent of the statute's overbreadth, we must review a decision of the Seventh Circuit addressing the same issue. In United States v. Baranski, 484 F.2d 556 (7th Cir. 1973), the Court declared the challenged clause of § 462(a) unconstitutional on its face. Id. at 570. It construed the statute as proscribing "the use of any means whatsoever to accomplish the hindrance." Id. at 564 (emphasis included). We question this holding for several reasons: First, although the case was decided after Broadrick, there is no reference to the "substantiality" standard and no express finding that § 462(a) was substantially overbroad. Second, the legislative history on which the Baranski decision depends is, in our view, inconclusive at best. There is only one line of committee testimony dealing with the language in § 462(a) which Baranski found unconstitutional. That sentence reads, "Certain changes of language have been made to incorporate judicial determinations made pursuant to the predecessor act." (Emphasis added.) See S.Rep. No. 1268, 80th Cong., 2d Sess. (1948), U.S.Code Cong.Serv. 1948, pp. 1989, 2008. Between the date of the statute's enactment in 1940 and its subsequent amendment in 1948, only two cases applied the challenged provision of § 462(a). One of them, Bagley v. United States, 136 F.2d 567 (5th Cir. 1943), protected a draft resister's right to speak out against the war. The other, Helton v. United States, 143 F.2d 933 (6th Cir.), cert. denied, 323 U.S. 765, 65 S.Ct. 118, 89 L.Ed. 612 (1944), upheld the conviction of a draftee who assaulted an examining physician at a time and location distant from the place where the examination was held. The Baranski Court concluded that because the Helton decision involved "force or violence," Congress did not intend to incorporate it. Rather, Judge Pell held that the amended language was aimed at the Bagley decision and that the quoted legislative history established that Congress intended to reverse that decision to prohibit such speech. This interpretation of the legislative history ignores several facts. The quoted sentence speaks of incorporating certain judicial determinations. In our view, the term "incorporate" connotes approval of a particular case, not an intent to reverse or reject its holding. We doubt that Congress would indicate its rejection of the Bagley decision by claiming to incorporate it. Moreover, the legislative history refers to judicial "determinations," but the Baranski Court concluded that Congress was referring to only one determination. Finally, it is quite possible that the statutory language was amended to incorporate the Helton decision and that Congress also approved of the Bagley case, but felt it unnecessary to amend the statute to register this approval. Since Bagley upheld the speech rights of a registrant, Congress might well have concluded that § 462(a) was never intended to cover speech and that no amendment was needed. Rather, use of the term "incorporate" in the legislative history would adequately convey Congress's approval of the Bagley decision. In this interpretation, the amended language was added to reflect the Helton case. The assault in Helton occurred some distance from the Selective Service headquarters and did not take place during a formal physical examination. It related to the draft system only in that the dispute causing the assault arose over the results of a preinduction examination. The Helton decision strained the language of § 462(a) to find an interference with the administration of the draft system. By appending the "or otherwise" language, Congress might have been both registering its approval of Helton and broadening the statutory language to clearly include such situations. This interpretation of congressional intent is more consistent with the terms used in the quoted legislative history because it does, in fact, incorporate or approve both determinations.
 
 
 9
 We do not, however, regard our interpretation of the pertinent legislative history as dispositive of the overbreadth claim. Either interpretation is plausible, but both are based on scant evidence[8] and rather fine distinctions in word choice and meaning. The importance of the issue presented and the potential impact of our determination cautions against relying on ambiguous legislative history to support a finding of constitutional invalidity. See Comment, The First Amendment Overbreadth Doctrine: A Comparison of Dellinger and Baranski, 65 J.Crim.L. 194, 198 (1974). We are aware of the general principle that courts should construe statutes to avoid a finding of unconstitutionality, Scales v. United States, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961); United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954), and that this principle presumes a legislative intent to act only within constitutional bounds. United States v. C.I.O., 335 U.S. 106, 120, 68 S.Ct. 1349, 92 L.Ed. 1849 (1948); cf. Note, Supreme Court Interpretation of Statutes to Avoid Constitutional Decisions, 53 Colum.L.Rev. 633 (1953). However, the preferred position of the First Amendment greatly weakens this presumption, United States v. Dellinger, 472 F.2d 340, 356 (7th Cir. 1972), cert. denied, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973); McKay, The Preference for Freedom, N.Y.U.L.Rev. 1182 (1959); Cahn, The Firstness of the First Amendment, 65 Yale L.J. 464 (1956), and, in any case, we need not rely on it or a saving construction because we believe the language of the statute is clear.
 
 
 10
 For analytical purposes, the challenged provision is separable into two component parts: The first describes the effect prohibited by the statute,[9] and the second sets forth the prohibited means for accomplishing the unlawful objective.[10] Viewed individually, the parts restrict activity and not the written word, oral expression or other inactive forms of communication protected by the First Amendment. Turning first to the prohibited effect portion, since the statute provides no definition, we look to the word's common or ordinary meaning. Webster's 3rd International Dictionary defines the verb to hinder as "to make slow or difficult the course or progress of: to keep from occurring, starting, or continuing: hold back, prevent, check." To interfere is defined as "to come in collision: to be in opposition: to run at cross purposes: to run into another or each other." In general, the connotation of both definitions is that the obstruction will be accomplished by an action of some sort. Taken in context, they imply an active hindering or physical interference with the administration of the Selective Service System. Cf. United States v. Mechanic, 454 F.2d 849 (8th Cir. 1971), cert. denied, 406 U.S. 929, 92 S.Ct. 1765, 32 L.Ed.2d 131 (1972). The focus is on action and not pure speech or other inactive forms of expression. In our view, the use of these words is strong evidence that Congress did not intend to proscribe the oral or written word.
 
 
 11
 Our conclusion that the words "hinder" or "interfere" imply action does not end the inquiry. Many actions involve expressive and nonexpressive elements.[11] Forms of conduct that express ideas without significantly interfering with legitimate state interests are privileged under the First Amendment. We must still consider whether the provision comprehends a substantial number of applications to privileged conduct. Taken alone, the words "hinder" or "interfere" might reach forms of conduct traditionally protected by the First Amendment, such as the distribution of handbills, Jamison v. Texas, 318 U.S. 413, 63 S.Ct. 669, 87 L.Ed. 869 (1943); Schneider v. Irvington, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938), picketing, Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); Amalgamated Food Employees v. Logan Valley Plaza, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968); A.F.L. v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855 (1941); Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), the use of loudspeakers, Saia v. New York, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948), and peaceful assembly and petition, Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); Taylor v. Louisiana, 370 U.S. 154, 82 S.Ct. 1188, 8 L.Ed.2d 395 (1962); Garner v. Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961). Without more, we would be forced to hold the challenged provision substantially overbroad. But these words must be read in conjunction with the prohibited means portion of the section. When so read, it is clear that Congress did not intend to restrict privileged forms of expressive conduct. In the Selective Training and Service Act of 1940, 54 Stat. 885, the provision that was amended to form the present § 462(a) read "(to) hinder or interfere * * * by force or violence * * * ." The phrase "by force or violence" limits the type of hindrances or interferences which the statute proscribes. We think this phrase is restrictive and evidences a congressional intent to proscribe a particular type of harm or threat to the draft system: e. g., forcible entry into draft offices, the destruction of draft files or equipment.[12]
 
 
 12
 The "or otherwise" language was added to the statute in 1948; the purpose of the amendment is not altogether clear. We doubt, however, that Congress intended to alter the focus of the proscription as radically as the Baranski decision suggests. It is unlikely that a provision narrowly aimed at a particular type of threatening conduct was expanded, by merely adding the phrase "or otherwise," to include speech or expressive conduct. In our view, such an interpretation ascribes an illogical aim to Congress and ignores the narrow aim of the original section. We believe § 462(a) was amended for a more limited purpose to relieve the government from having to prove the use of aggressive force or violence to sustain a conviction, see United States v. Eberhardt, supra at 1013, and to provide some flexibility in the statute for prosecuting conduct which clearly hinders the administration of the draft but was not covered by the original section. E. g., Helton v. United States, supra.
 
 
 13
 The aim of the original provision was limited; the language added in 1948 did not significantly expand the scope of intended applications. Although the amendment adds some ambiguity to the statute, we do not believe that it renders § 462(a) unconstitutionally overbroad. The number of impermissible applications which the statute may comprehend are few and, no doubt, insubstantial when judged in relation to the statute's plainly legitimate sweep. Broadrick v. Oklahoma, supra 413 U.S. at 615, 93 S.Ct. 2908. Accordingly, we affirm the decision of the District Court.
 
 
 
 *
 TOM C. CLARK, Associate Justice, Retired, Supreme Court of the United States, sitting by designation
 
 
 [1]
 Section 462(a) contains many clauses, but only one was read to the jury as part of the trial court's instructions and is pertinent to the present case. That portion of Section 462(a) reads as follows:
 (A)ny person or persons who shall knowingly hinder or interfere or attempt to do so in any way, by force or violence or otherwise, with the administration of this title or the rules or regulations made pursuant thereto, or who conspires to commit any one or more of such offenses, shall, upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment * * * .
 A description of the acts for which Turchick was indicted can be found in United States v. Turchick, 451 F.2d 333 (8th Cir. 1971).
 
 
 [2]
 Although courts and commentators alike agree on the essence of the facial overbreadth doctrine, there is some disagreement over the factors which give rise to a finding of facial invalidity. Thus, in United States v. Dellinger, 472 F.2d 340 (7th Cir. 1972), cert. denied, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973), the Court includes among the prerequisites to an overbreadth finding that "there is * * * (no) valid construction which avoids abridgement of first amendment interests." Id. at 357. The method of analysis followed in Dellinger involves a threshold question, whether the challenged law involves First Amendment interests, and a removal question, whether the expressive conduct is so related to action that the expression is carved away from First Amendment protection. Others suggest that a facial overbreadth test should translate into interest-balancing terms. See Note, Overbreadth Review and the Burger Court, 49 N.Y.U.L.Rev. 532, 540-541 (1974) (hereinafter cited as Burger ). These differences over the proper method of analysis do not detract from the essential agreement over the nature and purposes of the doctrine
 
 
 [3]
 "Facial" overbreadth analysis should be distinguished from overbreadth "as applied" to a particular claimant. The latter involves a judgment as to the constitutionality of a challenged statute based on the harm caused to the litigating party. The "as applied" method vindicates a claimant whose conduct is within the First Amendment but invalidates the challenged statute only to the extent of the impermissible application. "Facial" review proceeds without regard to the constitutional status of the litigant's conduct. Under this approach, a statute prohibiting substantial activity protected by the First Amendment is voided entirely. See generally Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844, 844-845 (1970) (hereinafter cited as Overbreadth )
 
 
 [4]
 Kunz v. New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951). See also Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); Overbreadth, supra at 845-846; Burger, supra at 532
 
 
 [5]
 The Court's exhaustive discussion of the numerous lawful applications of the challenged provision, Broadrick v. Oklahoma, supra 413 U.S. at 616-618, 93 S.Ct. at 2919, and its concluding sentence contribute to this impression. The decision ends with the conclusion that "Section 818 is not substantially overbroad and is not, therefore, unconstitutional on its face." This certainly suggests that the Court did reach the merits of the overbreadth claim and that its "substantial overbreadth" test for determining standing applies to the merits as well
 
 
 [6]
 Quoting from the Broadrick decision, "(P)articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Broadrick v. Oklahoma, supra 413 U.S. at 615, 93 S.Ct. at 2918. From this, it is apparent that a challenge to a statute regulating pure speech would succeed on a lesser showing of facial overbreadth. The distinction between speech and conduct is somewhat ambiguous, see Henkin, Foreword: On Drawing Lines, 82 Harv.L.Rev. 63, 76-82 (1968); Note, Of Shadows and Substance: Freedom of Speech, Expression and Action, 1971 Wis.L.Rev. 1209, but has some utility when the concept of speech encompasses both words and action primarily aimed at the communication of ideas. See generally, Tinker v. Des Moines Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940)
 
 
 [7]
 Two decisions have upheld the constitutionality of the challenged provision against overbreadth claims. United States v. Eberhardt, 417 F.2d 1009 (4th Cir. 1969), cert. denied sub nom., Berrigan v. United States, 397 U.S. 909, 90 S.Ct. 907, 25 L.Ed.2d 90 (1970); United States v. Farinas, 308 F.Supp. 459 (S.D.N.Y.1969), conviction affirmed on appeal, 448 F.2d 1334 (2nd Cir. 1971), cert. denied, 405 U.S. 934, 92 S.Ct. 946, 30 L.Ed.2d 810 (1972). Neither decision considered the language or legislative history of § 462(a) in any detail
 
 
 [8]
 The phrase "or otherwise" first appeared in § 12(a) of the Selective Service Act of 1948, 62 Stat. 604, 622, 50 U.S.C.App. § 462(a). Section 12(a) was an amendment to § 11 of the Selective Training and Service Act of 1940, 54 Stat. 885, 894-895. A thorough examination of the legislative history of each statute revealed no commentary of any consequence on the 1940 Act and only the quoted comment on the 1948 amendment
 
 
 [9]
 The phrase describing the prohibited effect is
 to hinder or interfere * * * with the administration of this title * * * .
 
 
 [10]
 The phrase setting forth the prohibited means is italicized below:
 to hinder or interfere * * * by force or violence or otherwise with the administration of this title * * * .
 
 
 [11]
 E. g. Tinker v. Des Moines Community School Dist., supra; Milk Wagon Drivers Local 753 v. Meadowmoor Dairies, Inc., 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836 (1941); Thornhill v. Alabama, supra
 
 
 [12]
 Recent decisions under § 462(a) closely parallel the evils it was designed to prevent. E. g., United States v. Baranski, 484 F.2d 556 (7th Cir. 1973) (defendants entered the offices of three draft boards, opened filing cabinets, pulled draft records and poured animal blood over them); United States v. Turchick, supra (defendants broke into Selective Service headquarters and were arrested with the tools to remove and destroy draft records); United States v. Eberhardt, supra (defendants entered draft board offices, opened cabinets containing Selective Service files and poured animal blood mixture over the documents)